

# In the
# Missouri Court of Appeals
# Western District

MERTENS CONSTRUCTION
COMPANY, INC.,

           **Appellant,**

v.

DIVISION OF EMPLOYMENT
SECURITY,

           **Respondent.**

)
)
)
)
)
)
)
)
)
)
)
)
)

**WD78655**

**OPINION FILED:  May 17, 2016**

**Appeal from the Labor and Industrial Relations Commission**

Before Division Three:  Gary D. Witt, Presiding Judge, James E. Welsh, Judge and
Anthony Rex Gabbert, Judge

Mertens Construction Company ("Mertens") appeals the decision of the Labor and

Industrial Relations Commission ("Commission"), which affirmed a decision of the

Appeals Tribunal finding that Mertens stands in the position of Prestage Quarries, Inc.

("Prestage") as a successor pursuant to section 288.110.[1]  Mertens argues that the

Commission erred because Mertens did not acquire substantially all of the business or

---

[1] All statutory citations are to RSMo 2000, as updated through the 2015 Cumulative Supplement, unless
otherwise indicated.

continue the business of Prestage without interruption, as required by section 288.110. We affirm.

## Factual Background

Mertens is a Missouri corporation that is in the business of mining, operating rock quarries, and selling crushed rock. Mertens's president is Kenneth Douglas Mertens ("Mr. Mertens"). Prestage, also a Missouri corporation, was also in the business of mining, crushing rock, and selling crushed rock to customers. Prestage conducted its business in a quarry on real estate that it owned. Gary Milligan ("Mr. Milligan") was the president of Prestage.

In August of 2012, Mertens entered into an Asset Purchase Agreement (the "Agreement") with Prestage, whereby Mertens purchased the real estate on which Prestage's quarry was located along with Prestage's inventory of crushed rock, equipment, supplies, goodwill, and customer list. Mertens also purchased and continued to use the telephone number previously used by Prestage. The sale did not include Prestage's accounts receivable, petty cash, cash in banks, CD's, prepaid insurance, and three vehicles. The Agreement did not require Mertens to hire any of Prestage's employees, and Mertens did not hire any of Prestage's employees. Prestage's employee workforce had dwindled prior to the sale and, by the time of the closing of the sale, Prestage had no employees.

As required by the Agreement, Prestage changed its name to Milligan Enterprises, Inc.,[2] and its sole business after the closing of the Agreement was the winding up of accounts receivable and preparing and filing tax returns. The Agreement also contained a non-compete agreement, in which Mr. Milligan and Prestage agreed not to compete with Mertens by selling goods, such as crushed rock, that are sold by Mertens for a period of three years within 125 miles of the purchased quarry in the state of Missouri.

Mr. Mertens testified before the Commission that after the closing date of the Agreement, Mertens continued to operate the mining and quarry business on both the property already owned by Mertens along with the property purchased from Prestage. The inventory of crushed rock acquired from Prestage, 75,000 tons, was added to Mertens's existing inventory and was sold to its existing customers and Prestage's former customers under Mertens's name. Mertens attempted, unsuccessfully, to have Prestage's land reclamation permit from the Missouri Department of Natural Resources ("MDNR") transferred to itself so that rock-crushing activities at the purchased quarry could continue. MDNR denied that request, and Mertens was required to apply for a new permit. Until the new permit was issued, Mertens sold the inventory of crushed rock from the purchased location but did not operate any mining or crushing operations. In August of 2013, Mertens was issued a permit to operate a relocated rock crushing plant on the property formerly owned by Prestage. Mertens now operates the quarry and a rock-crushing plant at that location. In response to DES's Successorship's Questionnaire,

---

[2] To avoid confusion, we will continue to refer to the purchased enterprise as "Prestage" for the purposes of this opinion.

3

both Mr. Milligan and Mr. Mertens responded that Mertens was purchasing all of Prestage's business and was continuing that business.

The Missouri Division of Employment Security ("DES") notified Mertens that it had determined that, effective January 1, 2013, it stood in the position of Prestage under section 288.110. Mertens was determined to have succeeded to Prestage's "separate account, actual contribution and benefit experience, annual payrolls, and liability for current or delinquent contributions, interest and penalties, and contribution rate as provided under Section 288.110 of the Missouri Employment Security Law." Mertens timely filed a request for a hearing, the result of which, finding that Mertens must stand in the place of Prestage, was affirmed by the Appeals Tribunal. The Commission also affirmed the decision of DES and the Appeals Tribunal, finding that Mertens stands in the position of Prestage for all purposes under section 288.110. Mertens now appeals.

**Standard of Review**

Appellate review of decisions of the Commission regarding the employment security law is governed by section 288.210 which provides, in pertinent part:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
> (2) That the decision was procured by fraud;
> (3) That the facts found by the commission do not support the award; or
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

4

*See e.g., Morrison v. Labor and Indus. Relations Comm'n*, 23 S.W.3d 902, 906 (Mo. App. W.D. 2000).

> While determinations of fact made by the Commission are conclusive and binding on the reviewing court if those facts are supported by substantial and competent evidence*, SportsTicker Enterprises v. Division of Employment Security*, 961 S.W.2d 909, 911 (Mo. App. W.D. 1998), we are not bound by the Commissions' conclusions of law or its application of law to the facts. *Landmark Industries of Illinois, Inc. v. Division of Employment Security*, 942 S.W.2d 446, 447 (Mo. App. W.D. 1997). Where the facts are undisputed and the issue involves the application and construction of a law to virtually uncontroverted facts, the issue is one of law. *Division of Employment Security v. Taney County Dist. R–III*, 922 S.W.2d 391, 393 (Mo. banc 1996).

*Id*.

## Analysis

### Point One

In Point One on appeal, Mertens argues the Commission erred in finding that Mertens stands in the position of Prestage under section 288.110 because Mertens did not acquire substantially all of the business or continue the business of Prestage without interruption. Mertens argues that because Prestage terminated the employment of all its employees prior to the transfer of its assets to Mertens, the Commission erred in finding that Mertens shall stand as Prestage's successor pursuant to section 288.110.

Section 288.110 provides a mechanism through which the State of Missouri, for the purpose of its employment laws, may treat an individual, organization or other "employing unit," which has acquired an "employer," as one entity. That statute, in relevant part, states:

5

Any individual, type of organization or employing unit which has acquired substantially all of the business of an employer, excepting in any such case any assets retained by such employer incident to the liquidation of the employer's obligations, and in respect to which the division finds that immediately after such change such business of the predecessor employer is continued without interruption solely by the successor, shall stand in the position of such predecessor employer in all respects, including the predecessor's separate account, actual contribution and benefit experience, annual payrolls, and liability for current or delinquent contributions, interest and penalties.

Section 288.110. Stated more succinctly and in terms applicable to the facts at bar, where a business acquires (1) substantially all of the business of an employer and (2) solely continues the business without interruption, then the acquiring business is treated as the successor of the predecessor employer for employment purposes. *See e.g., Atlas Mobilfone, Inc. v. Labor and Indus. Relations Comm'n*, 939 S.W.2d 928 (Mo. App. W.D. 1997). As recognized by Mertens, the purpose of the statute is employment stabilization. This Court has characterized the purpose and policy behind the statute as follows:

On the one hand, the statute protects the basic integrity of the employment security system by providing a means of collection of delinquent accounts when the business enterprise is ongoing and the benefits and burdens have been assumed by another. So likewise, when the shoe is on the other foot and the transferee is asserting a right to the lower rate established by the transferor, if the transferee has assumed the benefits and burdens of the prior operation in whatever form and however conveyed, it is equitable and in furtherance of the statutory purpose to stabilize conditions of employment to permit the transferee to obtain the lower rate of contribution and any value in the predecessor's account. This is done for the reason that the whole purpose of the system is to provide continuity and stability of employment. The incentive to a transferee, to continue uninterrupted and without decrease in employment the enterprise transferred, is the expectation of the lowered rate of contribution. Put another way, interpretation of the statute which emphasizes the necessity for stability in employment and the protection of the State's interest in collection of delinquent accounts, and which is based upon a realistic appraisal of the business situation, accomplishes the basic legislative goals.

6

*Mascom Mgmt., Inc. v. Labor and Indus. Relations Comm'n*, 586 S.W.2d 802, 806 (Mo. App. W.D. 1979). In our application of the statute, we must keep in mind that "[b]y the public policy of Missouri, economic insecurity due to unemployment is a serious menace to the state's welfare." *Div. of Emp't Sec. v. Taney Cty. Dist. R-III*, 922 S.W.2d 391, 394 (Mo. banc 1996); *see also* Section 288.020.1. Therefore, the legislature has instructed that the Employment Security Law "shall be liberally construed" to promote job security and unemployment compensation. Section 288.020.2.

Mertens sole argument in point one is that it should not be deemed to stand in the place of Prestage because prior to its acquisition of Prestage's business, Prestage had already fired all of its employees. Mertens argues that the public policy behind the statute does not support its application here due to the "absence of employment" at the time of the closing of the Agreement. In addition, Mertens argues that it has found no case in which a successor employer has been made to stand in for a predecessor under section 288.110 where no employees were retained by the successor employer. Mertens's argument is perplexing in a number of ways. However, before confronting Mertens's primary argument, which addresses the policy behind the statute, we will first consider the language of the statute itself.

Although addressed by neither Mertens nor DES, the language of the statute must be our first consideration. Statutory construction is a matter of law. *Beard v. Mo. State Emps.' Ret. Sys.*, 379 S.W.3d 167, 169 (Mo. banc 2012). "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give

7

effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Taney Cty. Dist. R-III*, 922 S.W.2d at 393 (quoting *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988)).

Section 288.110 provides that an organization which has "acquired substantially all of the business of an *employer*" and which solely continues that business uninterrupted shall stand in the position of the predecessor employer. (Emphasis added). "Employer" is a defined term. Section 288.032 sets out numerous ways that an individual, organization or other "employing unit" qualifies as an "employer" for the purposes of Missouri's employment laws. "Employing unit" is defined as any individual, organization, partnership, corporation common paymaster, or other legal entity [ . . . ] which has [ . . . ] in its employ one or more individuals performing services within this state." Section 288.030. Among the many ways that an "employing unit" qualifies as an "employer" is if it has "in any calendar quarter in either the current or preceding calendar year paid for service in employment wages of one thousand five hundred dollars or more" with certain exceptions inapplicable here. Section 288.032(1). Each employer is assigned a "base rate," which is the employer's contribution rate for its payment to DES. See Sections 288.110 and 288.090.

Any employing unit that has qualified as an "employer" within any portion of a calendar year is subject to the employment laws during the whole of that calendar year. *See* Section 288.080. The statutory scheme also provides a mechanism for an employer to terminate its status as an "employer"; it must file an application for termination of coverage, and DES must find that during the preceding calendar year the employing unit

8

did not have "a sufficient number of workers in employment and did not pay sufficient wages for services in employment to meet any of the conditions for establishing liability as an employer as set out in section 288.032." Section 288.080.2(1).

The evidence before the Commission was that prior to its acquisition by Mertens, Prestage had a base rate of 00.780% that Mertens would inherit pursuant to the statute.[3] The statutory language makes clear that a company, otherwise qualifying as an "employer" under the statute, does not automatically divest itself of that status by firing its employees. As explained above, there are timelines and procedures that an employer must follow to divest itself of that status. Before the Commission and on appeal, Mertens did not and does not argue that Prestage was not an "employer" as defined by the statute. None of the procedures to divest itself of that status were followed.

Given that Prestage clearly qualified as an "employer" at the time of Mertens's acquisition of Prestage's business pursuant to section 288.110, policy arguments regarding whether the statute *should* apply where the predecessor employer has fired all its employees prior to acquisition are arguments properly directed to the legislative branch and not this Court.[4] Previous cases have considered whether employees continue

_____

[3] Although the precise date is not clear, Mr. Milligan testified that he had terminated the employment of his employees prior to the closing of the Agreement in November of 2012.

[4] The Court notes, as an aside, that Mertens's argument regarding why the policy behind the statute does not support the application of section 288.110 in this case is not compelling. Mertens argues that because Prestage fired all of its employees prior to the acquisition of Prestage's business by Mertens, there are then no employment stabilization concerns that the statute would address by making Mertens stand in the place of Prestage. However, one of the consequences of standing in for a predecessor employer is succeeding to their liability for current or delinquent contributions, interest and penalties. *See* Section 288.110. Mertens's interpretation of the policy and application of the statute could encourage predecessor employers to terminate the employment of all employees prior to sale as a condition of the sale so that successor employers would not be responsible for the predecessor's current or delinquent contributions. This is one of the scenarios that the statute was designed to prevent. *See* *Mascom Mgmt., Inc.*, 586 S.W.2d at 806. This Court does not claim to judge the merits of Mertens's policy argument, but rather notes that, on its face, Mertens's argument against making an employing unit stand in for a

9

their employment with a successor employer as *one factor* in whether an employer's business is continued, and no cases have held that the absence of continued employment is a bar to finding that an employer must stand in for a predecessor under section 288.110. *See e.g., Union-May-Stern Co. v. Indus. Comm'n of Mo.*, 273 S.W.2d 766 (Mo. App. 1954) (number of employees retained only one factor considered by the court); *Chief Freight Lines Co. v. Indus. Comm'n, Div. of Emp't. Sec*., 366 S.W.2d 48 (Mo. App. 1963) (same). No cases suggest that the hiring of employees is the operative factor under the statute, but rather is only one factor among many.

We find, pursuant to section 288.110, that the mere fact that a predecessor employer has terminated the employment of all its employees prior to the acquisition of the business by an employing unit does not prevent DES from finding that the employing unit shall stand in the position of the predecessor employer.

Point One is denied.

## Point Two

In Point Two on appeal, Mertens argues the Commission erred in finding that Mertens stands in the position of Prestage under section 288.110 because Mertens did not continue the business without interruption as required by that section in that Mertens did not conduct rock-crushing activities until nearly nine months after it had purchased assets from Prestage.

---

predecessor employer in the circumstances of this case are not self-evident. A policy which would encourage mass termination of employees prior to the sale of a business does not make for a compelling argument.

10

Pursuant to section 288.110, for Mertens to be required to stand in the place of Prestage, it must also continue the business of the predecessor employer without interruption. The "business" of an employer is its "activity engaged in as normal, logical, or inevitable and usually extending over a considerable period of time: ROLE, FUNCTION." *Taney County Dist. R-III*, 922 S.W.2d at 394 (quoting Webster's Third New Int'l Dictionary 302 (1976); cf. Black's Law Dictionary 198 (6th ed. 1990). Here, both Mertens and Prestage were in the business of mining, crushing, and selling rock.

The Commission found that Mertens continued Prestage's business without interruption. This determination was based on a number of considerations. First, in response to DES's Successorship Questionnaire, both Prestage and Mertens indicated that the acquired business, Prestage, was in operation at the time of acquisition and that Mertens was continuing the business. The acquisition of the business was in November of 2012 and the Successorship Questionnaire was executed by Prestage on May 10, 2013 and by Mertens on June 10, 2013. Both described the business activities before and after acquisition as "quarry operations." Mr. Milligan was asked whether his business, Prestage, closed during the transfer process. His response was that his understanding was that "it stayed open" and "was just a transfer of the assets." Mr. Mertens was asked whether there was a break in operations during the transfer. He responded, "[N]o, I mean a different company took control and started [ . . . ] running the mine." With regard to the sale of crushed rock to established customers of Prestage, the evidence was that the sale of rock to those customers continued without interruption. Mertens acquired the same

telephone number used by Prestage and continued uninterrupted to sell crushed rock to Prestage's customers along with its own customers.

The fact is that before and after the sale of the business assets, the primary item for sale was crushed rock. The company was not paid to mine or crush the rock, it was paid for the sale of the final product, the crushed rock. The mining and crushing of the rock was for the purpose of producing more of its final product for sale. The sale of crushed rock from the purchased facility continued uninterrupted.

Mertens argues the evidence shows it was unable to continue Prestage's business without interruption because it was not able to continue the rock-crushing activities at the Prestage quarry until it had obtained a new rock-crushing machine along with a new permit from MDNR. Mr. Mertens testified that Mertens did not operate Prestage's rock-crushing plant after it acquired Prestage's business in November of 2012. This was in part due to the refusal by MDNR to allow Mertens to succeed to the permit granted to Prestage to operate its rock-crushing plant.[5] Regardless, the only activity not performed by Mertens immediately following the acquisition of Prestage's business was the actual crushing of rock. There is no evidence that the mining of rock was discontinued. Additional equipment sold by Prestage to Mertens included a loader, dozer, dump trucks, drills, etc. There is no evidence that the processing of previously crushed rock did not continue. There is evidence that the sale of previously crushed rock did continue, 75,000 tons of which Mertens had acquired from Prestage. Mertens was able to continue

---

[5] In addition, a Technical Review of that plant, sent to Mertens by MDNR in August of 2013, found that Prestage's former plant was not operating due to mechanical and electrical issues. This suggests that the plant may not have been operating at the time of Mertens's acquisition of the business from Prestage, but the evidence is unclear as to when the plant became unable to operate.

12

crushing rock at the quarry formerly owned by Prestage in August of 2013 when it relocated a new rock-crushing plant to the site and was able to secure the necessary permits to do so. There was substantial and competent evidence before the Commission that Mertens was able to continue the business of Prestage uninterrupted.

Mertens analogizes this case to *Mascom Management, Inc. v. Labor and Industrial Relations Commission*, 586 S.W.2d 802 (Mo. App. W.D. 1979) and argues that eventually doing the same business at the same location is not enough to impute liability. Because the "productive assets" of the quarry were not continued, then Mertens cannot be said to have continued Prestage's business. *Mascom,* however, does not address the issue here, which is whether a delay in the operation of a *part* of the business means the Commission cannot find that the business continued uninterrupted. In *Mascom*, a company had leased a property operated as a hotel but had surrendered the premises along with the furniture and beds to the leasing company after becoming delinquent on its rental payments. *Mascom*, 586 S.W.2d at 803. The leasing company then entered into an agreement with Mascom, which took over possession of the property and continued to operate it as a hotel. *Id.* The hotel remained open during the change of management. *Id*. However, Mascom did not have any contact with the prior lessee, did not negotiate or contract with them, did not assume any accounts payable or receivable. *Id*. at 803-04. This Court, in rejecting the Commission's claim that Mascom had taken the place of the prior lessee, found that "Mascom received absolutely no benefit from the prior operation by way of assets, either tangible or intangible." *Id*. at 807. The issue was not a delay in

the operation of part of the business but whether the successor company acquired any of the benefits or burdens of the predecessor employer.

Unlike *Mascom*, here the evidence showed that Mertens acquired directly from Prestage its quarry, its inventory of 75,000 tons of crushed rock, mining equipment, its phone number, its goodwill and its information regarding its customer base. It also obtained an agreement that Mr. Milligan and Prestage would not compete with Mertens within 125 miles of the quarry for a period of three years, and Mr. Milligan could no longer use the Prestage brand name. The evidence showed that Mertens continued to sell crushed rock, previously sold by Prestage, without interruption. That there was a delay in obtaining a permit to operate a rock-crushing plant on Prestage's property following its acquisition by Mertens does not mandate a finding that the operation of the business was not continued uninterrupted under section 288.110. This is particularly true here in light of the substantial evidence that showed uninterrupted operation of all of the remaining aspects of this business. Here, there is substantial competent evidence to support the Commission's determination that Mertens continued Prestage's business without interruption.

Point Two is denied.

## Conclusion

The decision of the Commission is affirmed.

_____
Gary D. Witt, Judge

All concur

14